(15 App. Div. 272.)

PEOPLE ex rel. HANNAN v. BOARD OF HEALTH OF CITY OF TROY
et al.

(Supreme Court, Appellate Division, Third Department.  March 3, 1897.)

OFFICERS—REMOVAL—VETERANS OF CIVIL WAR.
    Laws 1896, c. 821, forbidding the removal from office of any honorably
    discharged soldier except for incompetency or misconduct after the hearing,
    applies to one appointed without the examination required by the civil
    service laws.

Appeal from special term, Rensselaer county.

Application by William H. Hannan for writ of mandamus to compel the board of health of the city of Troy and others to reinstate relator in the position of register to the board of health of the city of Troy.   From an order granting peremptory writ, defendants appeal. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Thomas S. Fagan, for relator.
William J. Roche, for defendants.

PARKER, P. J.   At the time of the employment of the relator by the board of health of the city of Troy, the act of 1885 (chapter 270), was in force, and controlled the matter.   By section 5 of that act it is made the duty of the board "to supervise and make complete the registration of all births, marriages, deaths," etc.   The act does not name or create any such officer as registrar, but section 8 thereof authorizes the board to "employ all such persons as shall be necessary to enable them to carry into effect the orders, etc., and the powers vested in them by this act, and to fix their compensation."   Such is the authority under which the relator was employed in April, 1888, and he continued to act under such employment until he was removed by the board on June 4, 1896.   Under such employment, the board had authority to remove him at any time, at its pleasure, unless, as an honorably discharged soldier, he was protected from such removal by some statute of the state.   People v. Robb, 126 N. Y. 180, 27 N. E. 267;  People v. Morton, 148 N. Y. 156–160, 42 N. E. 538.   By chapter 821, Laws 1896, it is provided, in substance, that "no person holding a position by appointment or employment in the state of New York or of the several cities, etc., thereof, and receiving a salary or per diem pay from the state or from any of the several cities, etc., who is an honorably discharged soldier, etc., shall be removed from such position or employment, except for incompetency or misconduct shown, after a hearing upon due notice upon the charge made, and with the right to such employé, or appointee to review by writ of certiorari."   And, inasmuch as no notice whatever was given the relator of the intent to remove him, and no charges were made against him, he claims that his removal was an unlawful one under the provisions of this act.   To this claim the defendants reply that the re-

lator is not within the protection of this act, because at the time of his employment he had never passed the examination required by the statutes regulating the civil service of the state (chapter 354, Laws 1883, as amended by chapter 410, Laws 1884), and that, there-fore, his employment was unlawful. They contend that, inasmuch as this statute allows a removal only upon the ground of "incom-petency or misconduct," it was not intended to apply to those who had entered into such employment in violation of law, and that, there-fore, upon the record before us, it appearing that the relator was never lawfully employed, he cannot invoke such act as a protection against his removal. They argue that, if it is held otherwise, the operation of the act will be to legalize all unlawful appointments or employments of such soldiers, and to continue them in office so long as they are capable of performing its duties, and are guilty of no misconduct in the performance thereof. This claim on the part of the defendants cannot be sustained. The history of the legislation designed to secure and preserve to the honorably discharged soldier employment in the civil service of the state, and of all the municipal divisions thereof, is clearly given in People v. Wright, 7 App. Div. 185, 40 N. Y. Supp. 285. In People v. Morton, above cited, it was held, that under the act of 1894 (chapter 716) such a soldier could not be removed from his employment by the state officers except for "in-competency, or conduct inconsistent with the position held by him"; but that the officers making the appointment or employment were the judges upon that question, subject only to any willful or perverse action; and that no notice of an intent to remove was required by that statute, and none was, therefore, necessary. Then followed the statute of 1896, above cited, which requires notice to be given and charges made. From all this legislation the clear and determined in-tent is apparent to make secure to the veteran the position which, through either appointment or employment, he has once obtained, and that his removal can be justified only upon a case made, after he has had full opportunity to be heard. The objection that he may, in this way, be continued in a position unlawfully entered upon, is, in my opinion, of little account. In the first place, it is not at all clear that the legislature did not intend to continue in office or em-ployment any such veteran so long as he is able to and does properly perform his duties, even though he had never passed the civil service examination; but, if that be not so, the question of his competency would, I think, include the question of his legal qualification for the office or employment. The definition of "incompetency" includes "disqualification" as well as "inability" or "incapacity." See Wor-cester's Dictionary, also Century Dictionary. Hence, if the appoint-ing power desires to discharge an appointee on the ground that he was disqualified by law when appointed, the statute of 1896, above cited, requires it to give notice to the veteran so appointed, to meet that specific charge so made against him. I conclude, therefore, that the question of the validity of the relator's employment is not one to be determined in this proceeding. The board had no right to remove him without having given him a statement of the charges made against him, and a notice and opportunity to meet them. Hence his

removal was illegal, and the peremptory mandamus to restore him was properly granted.

The order appealed from should be affirmed, with costs.    All concur.