Froessel, J.
Petitioner, a patrolman with 30 years of service in the New York City Police Department, was suspended on April 28, 1956, after being named as “ finger-man ” in a series of payroll holdups by two members of an alleged holdup gang. Several of the victims of the gang had used petitioner in the past to guard their payrolls. On May 1 and 3, 1956, two sets of charges were filed against petitioner. The first set — referred to as the escort charges (No. 28644)—contained 13 specifications. Four violations of Department Rules and Regulations were aEeged with respect to the escort of each of three named persons:
1. Failure to obey lawful order of superior (to discontinue escort service after April 1, 1952) in violation of rule 201 (Specs. 1, 5, 9).
2. Acceptance of gratuities for such service without consent of the Commissioner in violation of rule 232 (Specs. 2, 6, 10).
3. Failure' to obtain permission to leave post and (in two cases) precinct confines or to make entry thereof in memo book, in violation of rule 114 (Specs. 3, 7, 11).
4. Riding in auto other than Police Department vehicle in violation of rule 125 (Specs. 4, 8, 12).
The 13th specification charged petitioner with failure to preserve his completed memorandum pads for future reference, in violation of rule 185.
The second set of charges — referred to as the criminal charges (No. 28645)—contained 8 specifications alleging various acts of supplying information to the holdup gang and receipt of a share of the proceeds of certain of the robberies. Petitioner pleaded not guilty to both sets of charges, and a *386 hearing was set down for June 4th. On that date the Corporation Counsel requested an adjournment of three weeks so that he could have a week to serve a requested bill of particulars and defendant’s counsel could have two additional weeks to prepare his defense. Petitioner’s attorney acquiesced, stating that “the time would be contingent upon when we received” the bill of particulars.
The Corporation Counsel did not serve the ME of particulars on the escort charges until the adjourned date of June 27th. Petitioner’s attorney then stated to Commissioner Martin that he and opposing counsel had tentatively agreed upon a two-week adjournment pursuant to an understanding at the prior hearing that petitioner should have a reasonable time to study the ME. When the Commissioner denied an adjournment, petitioner’s attorney stated he was totaEy unprepared to go to trial at that time, and that to do so would prejudice his cHent. He indicated his intention to walk out of the hearing if the Commissioner insisted on proceeding, and advised his cHent to do Hkewise, stating: “you may, as you see fit, try him in absentia.” The Commissioner ordered petitioner to proceed to trial but the latter, on advice of counsel, left the hearing in the company of his attorney. Thereupon Commissioner Martin adjourned the hearing without date.
Petitioner’s refusal to participate in the trial on June 27th was made the subject of a third set of charges, referred to as the insubordination charge (No. 28793). The specification aEeged that “ Ptl. Grottano did knowingly and wilfuEy disobey an order by the Trial Commissioner Joseph P. Martin ”, and then referred to the circumstances above recited. At the end of the specification appears the notation: “ (R&R 201-297-435).” Rule 201, already aEuded to with respect to the escort charges, required obedience to “ aE lawful orders of his superior officers rule 297 provided for punishment of “ disorder or neglect to the prejudice of good order, efficiency or discipline and rule 435 provided, among other things, that ‘ ‘ prompt obedience to orders * * * wiU be exacted and rigidly enforced ”,
On July 6th, petitioner pleaded not guilty to the new charge, and it and the escort charges were set down for trial by Deputy Commissioner Melia for July 10th and later for July *387 11th. Although petitioner’s attorney conceded receipt of the bill of particulars on the escort charges on June 27th, together with a copy of the minutes of the investigation, he stated he had not yet inspected the department records with respect thereto, and twice protested to the Commissioner: “I don’t see what the hurry is.” Three days previously, on or about July 3d, petitioner had applied for retirement to take effect on August 2d (see Administrative Code of City of New York, § B18-4.0, subd. c).
The Commissioner indicated that the criminal charges would be tried not more than one week after completion of the trials on the other two charges, and the Corporation Counsel stated that he was then in a position to comply with petitioner’s demand for a bill of particulars on the criminal charges. The prior objection that divulging of certain confidential information might embarrass or impede the prosecution of the robbery cases was no longer pressed. Upon hearing this, petitioner’s attorney declared his refusal to proceed with the trial of any charges unless the criminal charges were tried first or dismissed, although at the June 4th hearing he merely stated that he preferred that “the quasi criminal charges” be moved first.
He made a “special appearance” on July 11th, the day finally set for trial, to repeat his objection, and upon denial of his application he said:
“ Under these circumstances may I in all due respect to you, Mr. Commissioner, advise my client not to participate in these proceedings, and we will take leave and you may do as you see fit provided you conduct this entire proceeding within his legal and constitutional rights.”
Shortly thereafter, petitioner and his attorney walked out of the hearing room, and the Commissioner proceeded to take testimony on the insubordination and escort charges. The witnesses included Commissioner Martin, Inspector Siegert and the three persons for whom petitioner was charged with providing escort service.
One week after the hearing, on July 18th, Commissioner Melia found petitioner guilty as charged, and recommended his dismissal. On July 27th respondent determined that petitioner *388 was guilty as charged, except for specification 6 and part of specification 2 of the escort charges—both concerning receipt of gratuities — and ordered that he be dismissed. It is conceded that no hearing was ever had on the criminal charges — despite promises to that effect by the Corporation Counsel and the Trial Commissioner—nor were the charges dismissed. It is also undisputed that no criminal prosecution was evei instituted against petitioner.
Several issues are presented by this appeal. Petitioner challenges his dismissal on the ground that it was based upon a hearing ‘ ‘ held in the absence of the petitioner who was ordered to trial under circumstances constituting a grave abuse of discretion”. We do not see how Commissioner Helia’s refusal to grant an adjournment beyond July 11th could be considered an abuse of discretion. As set out above, petitioner had been served with a bill of particulars on the escort charges, as well as a copy of the minutes of investigation, on June 27th—and his attorney offered no valid reason why he had been unable to conduct the necessary investigation preparatory to trial, nor why such investigation could not have been completed prior to the trial date of July 11th, by which time he would have had the bill two weeks plus one day. Departmental regulations required that a trial be conducted “without unnecessary or unreasonable delay” (art. 5, § 13). In view of the fact that petitioner’s retirement would take effect August 2d, the Trial Commissioner could take into account petitioner’s apparent attempt to “ render the trial futile insofar as [his pension was] concerned” (Matter of Evans v. Monaghan, 306 N. Y. 312, 323).
We also think that the Commissioner had power to try petitioner in his absence, after his refusal to participate in the trial and under the circumstances here presented. Petitioner’s attorney seems to have been under the impression throughout the proceeding that the department had the power to hold a disciplinary trial in the absence of the defendant. Upon walking out the first time, he told Commissioner Martin, as already noted: “ you may, as you see fit, try him in absentia.” He probably took this attitude because he assumed the escort charges were not serious. On walking out the second time, he said to Commissioner Helia: “ you may do as you see fit pro *389 vided you conduct this entire proceeding within his legal and constitutional rights.” While it would no doubt have been better if the department could have tried the so-called criminal charges prior to or with the less serious offenses, its failure so to do did not justify petitioner’s refusal to participate in the trial, particularly in view of what had previously transpired. A policeman may not walk out of a disciplinary hearing to avoid a trial on the eve of his retirement, and then claim that an otherwise lawful trial is invalid because he was tried in absentia.
In People ex rel. Miller v. Board of Police Comrs. (67 N. Y. 475, 477), we said:
“ The accused did not appear in person or by counsel, and the board were therefore authorized to proceed and publicly examine into the charges and inquire into their truth in his absence and ex parte.”
(See, also, People ex rel. Clapp v. Board of Police, 5 Hun 457, revd. on another ground, 72 N. Y. 415.) Although sanctioning generally a trial in absentia in the Miller case, we reversed the dismissal since the Commissioners had not conducted a trial or examination but had “ adjudged him guilty upon a paper not legitimately before them ”. The trial of the escort charges in the instant case, on the other hand, was conducted with due regard for petitioner’s rights.
A further question presented is whether petitioner’s refusal, on the advice of counsel, to obey the order to proceed to trial on June 27th could be made the basis of an insubordination charge. We conclude that it may not. Insubordination presupposes a “ lawful ” order of a superior (rule 201). Here the order to proceed to trial under the circumstances involved constituted an abuse of discretion on the part of the Trial Commissioner (see Matter of Bush v. Beckmann, 283 App. Div. 1070). At that stage of the proceedings — the June 27th hearing— in contrast with the later stage heretofore discussed, petitioner was clearly entitled to an adjournment for a reasonable time in order to prepare his case, in light of the fact that the bill of particulars was not served until the morning of June 27th.
We think the insubordination charge should be dismissed for an additional reason. When the Trial Commissioner ordered *390 petitioner to proceed to trial, he was not acting in the capacity of his “ superior officer ” within the meaning and intent of the department rules. In People ex rel. Schauwecker v. Greene (96 App. Div. 249, 254), the police officer was tiharged with insubordination for refusing at a trial, on the advice of counsel, to be sworn on behalf of the prosecution. In reversing and ordering the officer’s reinstatement, the unanimous court stated:
“We think a distinction is to be made between the position occupied by a commissioner generally and when he is presiding as a judge at a trial. At such times the accused has been suspended from the force, and the commissioner is acting not as his superior officer but as his judge upon the charges preferred. The rules governing judicial tribunals, therefore, and not the rules of the police department would seemingly apply.”
See, also, Martin v. O’Keefe (195 App. Div. 814, 821) where the court additionally stated:
11 If the right to counsel secured to the accused by the statute means anything, the action of the suspended police officer in foEowing that advice cannot be made the basis of a charge of insubordination.”
The policy behind these decisions is a wise one. To hold otherwise and subject defendants in these quasi-judicial trials to discipEnary charges for every refusal to obey an order of the Trial Commissioner pertaining to the conduct of the trial would unduly stultify such trials, and hamper the actions of attorneys in defending their cEents against what are often serious charges.
We conclude that there is substantial evidence to support the findings of guilt on the various specifications that make up the escort charges. Since, however, the insubordination charge may not be sustained, we must remit the matter to the respondent to redetermine punishment in the light of the charges that have been sustained (Matter of Flo Inn v. O’Connell, 305 N. Y. 602; Matter of Wood v. Village of Port Chester, 284 App. Div. 900; People ex rel. Long v. Whitney, 143 App. Div. 17, 21). If, upon the remission, the new punishment imposed is whoEy disproportionate to the remaining offense or offenses, the peti *391 tioner will have an opportunity for further judicial review (Civ. Prac. Act, § 1296, suhd. 5-a).
The order appealed from should he modified by annulling so much of the determination of respondent as finds petitioner guilty of the charge contained in case No. 28793 (the so-called insubordination charge) and as dismisses him from the police force, Police Department, City of New York, and the matter remitted to respondent for a redetermination of the measure of punishment with respect to the charges which have not been annulled, and, as so modified, the order appealed from should he affirmed.
Chief Judge Conway and Judges Desmond, Dye, Fund, Van Voorhis and Burke concur.
Order modified and, as modified, affirmed, with costs to appellant, and the matter remitted to the Police Commissioner for further proceedings in accordance with the opinion herein.