STATE DIVISION OF HUMAN RIGHTS, Respondent, v CITY OF SYRACUSE et al., Petitioners.

Fourth Department, May 27, 1977

*David M. Garber, Corporation Counsel,* for petitioners.

*James Meyerson* for Richard Patterson.

SIMONS, J. This is a proceeding under section 298 of the Executive Law by which petitioners seek to annul the determination of the State Human Rights Appeal Board dated July

29, 1976 which reversed an order of the Commissioner of the State Division of Human Rights. We hold that on this record the State Human Rights Appeal Board erred in reversing the State Division of Human Rights.

Respondent, Richard Patterson, a Black person, was a policeman employed by the Syracuse Police Department. On January 20, 1971 he was suspended from duty for failing to obey the order of a superior officer that he submit a written report concerning a public altercation between himself and other policemen which occurred the night before in the War Memorial Auditorium. The suspension was ordered by the Deputy Chief of Police during petitioner Chief of Police Sardino's absence from the city. Subsequently formal charges were lodged against respondent pursuant to section 75 of the Civil Service Law.

On February 23, 1971 while the section 75 charges were pending, the Chief of Police encountered respondent in the lobby of the public safety building on his knees praying. When questioned, respondent appeared irrational to the Chief of Police and the chief called the health officer, who ordered respondent taken to Syracuse Psychiatric Center. After examining him briefly the officials at the center transferred respondent to Marcy State Hospital because they were unable to handle him. On March 9, 1971, while respondent was a patient at Marcy, his suspension was lifted and he was placed on sick leave. On March 16, 1971 he was released from Marcy State Hospital and his condition was listed as "improved".

There followed a series of incidents which involved the respondent. He went to Yonkers and allegedly harassed a Black policewoman; traveled to Chicago where he created a disturbance in a hotel and caused damages in the office of *Ebony Magazine,* was arrested and eventually taken to a mental hospital; and he was involved in several incidents in Syracuse in which he allegedly interfered with Syracuse police officers in the performance of their duties by (a) obstructing an officer attempting to arrest a Black boy suspected of theft, (b) tipping off shoplifting suspects that plainclothes officers watching them were policemen, (c) publicly arguing with a fellow police officer who had asked him to move his illegally parked car. Additionally there was evidence of disturbances created by respondent in two separate bars when he became loud and boisterous, demanded special treatment and attempted to intimidate the managers by threatening a civil

rights complaint against one manager and attempting to extort money from the manager in the other bar by referring to the number of drug sales in the bar and the trouble that such sales could cause him.

On June 2, 1971 respondent's sick leave was terminated, he was placed on suspension once again and the section 75 charges were amended to include the incidents just described. Petitioners tried on several occasions to serve these amended charges personally and to secure his appearance for the hearing that had been scheduled. When they could not locate respondent, through his family, his former attorney or through an extensive police search, they served the amended charges on him by certified mail and conducted the hearing in his absence (see *Matter of Grottano v Kennedy*, 5 NY2d 381). Respondent was found guilty of six charges of misconduct and the several specifications thereunder for violating various rules of the police department and was dismissed. He subsequently instituted an article 78 proceeding to annul his dismissal, alleging particularly that he had not received proper notice of the amended charges and that the proceeding was unlawful because conducted in his absence. Special Term's order dismissed his petition and he did not appeal that order.

During the period of his suspension, respondent filed a complaint against the police department with the State Division of Human Rights which was dismissed for lack of probable cause. The dismissal was reversed by the appeal board and the case was remitted to the commissioner. The hearing and decision which is the subject of this appeal followed. In his complaint respondent alleged that his suspension from January 20 to March 9, 1971 was an unlawful discriminatory act in that the punishment was unequal and more severe than punishment accorded to white police officers guilty of similar violations. The commissioner so found and ordered petitioner to pay respondent back pay for the period involved, $1,500 damages for mental anguish and incidental relief. That portion of the commissioner's order was affirmed by the appeal board and is not challenged by petitioners in this proceeding.

Subsequently, respondent amended his complaint to join the petitioner City of Syracuse as a party and to allege that his dismissal from the police force in August, 1971 was discriminatory. While the human rights hearing was in progress in 1974, respondent amended his complaint a third time to join petitioner Chief of Police Sardino as a party and to allege that

Chief Sardino was guilty of the unlawful act of retaliation in directing respondent's arrest during the human rights hearing pursuant to a nonsupport warrant issued by Family Court and for directing that he pay several past-due traffic tickets at that time or face arrest under an outstanding warrant. With respect to these additional charges, the commissioner found no unlawful discrimination in respondent's dismissal from the police department and no unlawful act of retaliation on the part of the Chief of Police. By a vote of three to one the State Human Rights Appeal Board reversed these findings, its order stating that "There is substantial evidence in the record" that petitioners unlawfully discriminated in discharging respondent and Chief Sardino unlawfully retaliated against him. This proceeding followed.

The power of the Human Rights Appeal Board to review is limited, as is this court's, to determining "whether the decision of the commissioner is supported by substantial evidence" *(State Div. of Human Rights v Columbia Univ.,* 39 NY2d 612; and see Executive Law, § 298; *City of Schenectady v State Div. of Human Rights,* 37 NY2d 421; *Matter of Mize v State Div. of Human Rights,* 33 NY2d 53, 57). In reversing the commissioner, the board made a fundamental error of law by substituting its view of the evidence for the view of the evidence accepted by the commissioner. It is quite possible that there might be substantial evidence to support either the decision of the commissioner or the contrary decision of the majority on the appeal board. But the commissioner's decision must prevail if it is supported by substantial evidence and it is supported by substantial evidence as long as it rests upon "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion". The choice of which conflicting evidence to accept lies with the commissioner and his finding is supported by the evidence "and is conclusive where others might reasonably make the same choice" *(Matter of Stork Rest. v Boland,* 282 NY 256, 274; and see *Matter of Collins v Codd,* 38 NY2d 269, 270-271).

The evidence before the commissioner established that in an uncontested hearing held pursuant to section 75 of the Civil Service Law, respondent had been found guilty of several acts of misconduct specified under six charges of violating departmental rules. The propriety of that hearing was confirmed by the order of Special Term which was not appealed and it justified the commissioner's finding that the discipline was not

the result of unlawful discrimination but based upon proven acts of misconduct (cf. *Matter of Board of Educ. of City of Albany v State Div. of Human Rights,* 38 AD2d 657, affd 30 NY2d 925). Furthermore, proof of the same and additional instances of misconduct was established by credible evidence at the hearing of the State Division of Human Rights. Upon this state of the record, the only issue remaining for the commissioner was whether the penalty of dismissal was excessive when compared to the penalties imposed upon white officers for similar misconduct. His finding that the penalty was appropriate to the misconduct charged and not discriminatory was supported by the record.

The appeal board found that Chief Sardino was guilty of unlawful discrimination in dismissing respondent and retaliating against him and that he was necessarily guilty of discrimination in "ratifying" the Deputy Chief's suspension of respondent for the period January 20 through March 9, 1971. Chief Sardino was not joined as a party or named in any complaint except for the third amendment charging retaliation. The commissioner's implicit finding that he was not to be found guilty of discrimination personally and that his concurrence in the suspension was not motivated by discrimination was proper on the pleadings and supported by the evidence. With respect to the charge of retaliation against Chief Sardino for directing execution of the nonsupport warrant and insisting on payment of the traffic tickets, it appears that respondent had been issued several traffic tickets which had remained unpaid for approximately two years and the nonsupport warrant had been outstanding for six weeks. Respondent had moved to Brooklyn and prior efforts to serve him in Family Court and in the department hearings had been unsuccessful. Under the circumstances, the commissioner could find that the Chief of Police was not guilty of retaliation in directing execution of the warrant when respondent appeared in Syracuse for the human rights hearings and demanding that the traffic violations be satisfied immediately or the outstanding traffic warrant would be executed.

The determination of the Human Rights Appeal Board should be annulled and the determination of the State Division of Human Rights reinstated.

MOULE, J. P., CARDAMONE, DILLON and WITMER, JJ., concur.

Petition unanimously granted, without costs, determination

of Human Rights Appeal Board annulled and determination of State Division of Human Rights reinstated.