THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL DUANE BYERS, Appellant.

Fourth Department, November 16, 1979

APPEARANCES OF COUNSEL

*Richard H. Speranza (Robert Viola* of counsel), for appellant.

*Aldo L. Di Florio, District Attorney (Shavasp Hanesian* of counsel), for respondent.

### OPINION OF THE COURT

CALLAHAN, J.

Defendant was convicted of rape in the first degree (Penal Law, § 130.35, subd 1), and murder in the second degree (Penal Law, § 125.25, subd 3, "felony murder"). He maintains, *inter alia,* that his confession should have been excluded on the basis that it was the product of an improper continuation of interrogation after he had requested an attorney.

In the course of their investigation the police learned that the victim had left a girlfriend's apartment early that morning with the defendant. At approximately 5:00 P.M. that evening police informed defendant of their interests, advised him of his constitutional rights and requested that he accompany them to the police station. Defendant was not under arrest and voluntarily agreed to go. Once at the police station, defendant again was advised of his rights from a pre-printed form, and he executed a waiver. The first several hours of interrogation concerned general background information and no inquiry was made as to the victim. Around midnight an investigator of the Niagara County District Attorney's office had a conversation with defendant relative to his submitting to a lie detector test. Defendant consented to take the polygraph test. In preparation thereof the investigator reviewed

the procedure and questions to be asked. One area of examination pertaining to another lady friend was particularly disturbing to the defendant, at which time he became angry and requested a lawyer before answering more questions. The investigator left the room and advised the detectives that defendant asked for an attorney. This request for a lawyer was repeated to the detective in charge when he re-entered the room. After more discussion with the officer, defendant acquiesced and consented to continue the test, which was then conducted at approximately 2:00 A.M. When completed, the investigator approached defendant and stated, "When you came in here, I believed you were telling me the truth. I have seen two signs of deception on both of the charts." He then asked defendant whether he could "hold his hand so that perhaps he may be able to gain strength from the Lord so that he may be able to tell me the truth about this unfortunate incident that happened". Defendant became very emotional, started to cry, and then admitted what had taken place; whereupon, the investigator advised the detectives that defendant had confessed. Defendant made oral admissions to the detectives which were reduced to a written statement, the printed portion of which set forth the rights of the accused. During this period, defendant continued to hold the hand of the investigator.

■ It is a fundamental constitutional principle that in considering the admissibility of statements obtained from an individual who is subjected to custodial police interrogation, if a suspect indicates in any manner and at any stage of the process of interrogation that he wishes to consult with an attorney before speaking, there can be no subsequent questioning by the police *(Miranda v Arizona,* 384 US 436; *People v Buxton,* 44 NY2d 33; *People v Jackson,* 41 NY2d 146; *People v Rivers,* 64 AD2d 834). On the record, it must be held as a matter of law that defendant requested the assistance of counsel *(People v Dean,* 47 NY2d 967; *People v Hinton,* 45 NY2d 941; *People v Clark,* 45 NY2d 432). All three police officers who testified at both the *Huntley* hearing and the trial admitted that defendant had requested a lawyer. The proof is thus clear that defendant did request the assistance of counsel before he made incriminating admissions. As a result the strict mandates of *Miranda* came into effect and the police became duty bound not to question defendant without first scrupulously honoring his right to counsel *(People v Dean,*

*supra; People v Grant,* 45 NY2d 366; *People v Buxton, supra).* This the police failed to do.

After a defendant has stated that he desires to speak with an attorney, even "persuading" conversation or a subtle tactic can be deemed an unconstitutional interrogation *(People v Maerling,* 46 NY2d 289, 302-303; *People v Rivers, supra,* p 835; *People v Forte,* 59 AD2d 724; *People v Jackson, supra).* Defendant had twice expressed his desire to speak with an attorney, once to the investigator from the District Attorney's office and once to the police officer who was in charge of the investigation. It was only after he had been talked to again by two police officers that he acquiesced and agreed to continue. Under these circumstances it cannot be said that the police officers "scrupulously honored" defendant's request for counsel before they continued with the interrogation *(People v Grant, supra,* pp 376-377; see, also, *Michigan v Mosley,* 423 US 96).

■ ■ The People contend that defendant's confession was not the result of a custodial interrogation and therefore was proper. Indeed, the trial court found that defendant was not in custody at the time of his confession because he was never arrested nor led to believe he was under arrest. Although great deference must be allowed to the trier of the fact, we are not bound to honor such finding where it is unsupported as a matter of law *(People v Leonti,* 18 NY2d 384, 390). In deciding whether a defendant is in custody the test is not what the defendant thought, but rather what a reasonable man, innocent of any crime, would have thought had he been in the defendant's position *(People v Yukl,* 25 NY2d 585, 589). The request to come to the police station may easily carry an implication of obligation, and the appearance itself, unless clearly shown to be voluntary, may be an awesome experience for the ordinary citizen *(Dunaway v New York,* 442 US 200). If not custodial at its inception in this case, surely it had become custodial at the time of the polygraph test or even before, when fingernail scrapings and pubic hair samples were taken. Thus, the confession by the defendant was improperly admitted at the trial (CPL 60.45, subd 1, subd 2, par [b], cl [ii]), constituting reversible error.

As a result of the above errors the judgment of conviction should be reversed, the oral and written confessions suppressed, and a new trial granted. In view of the foregoing, we do not address the other issues raised in this appeal.

HANCOCK, JR., J. P., SCHNEPP, DOERR and WITMER, JJ., concur.

Judgment unanimously reversed, on the law and facts, motion to suppress granted, and a new trial granted.